BEATRICE GROSSMAN, complainant-appellant,

*v.*

CORNELL GROSSMAN, defendant-respondent.

[Argued May 26th, 1948. Decided September 3d, 1948.]

*Messrs. McCarter, English & Studer (Mr. George W. C. McCarter,* of counsel), for the complainant-appellant.

*Mr. Leslie H. Cohen (Mr. Sol Diener,* of counsel), for the defendant-respondent.

The opinion of the court was delivered by

DILL, J.

Complainant-appellant, Beatrice Grossman (hereinafter referred to as the wife), filed a bill of complaint in the Court

of Chancery against her husband, Cornell Grossman (here-
inafter referred to as the husband), praying for the allowance
of separate maintenance for herself and the infant daughter
of their marriage, security for the payment thereof, and coun-
sel fee for the prosecution of her suit. At the conclusion of
the hearings Advisory Master Hillenbach advised a decree
dismissing the wife's bill of complaint for separate mainte-
nance for herself, awarding custody of the minor child to her,
directing the husband to pay the sum of $30 per week for the
support of their minor child, and allowing the wife a counsel
fee of $500. The wife appeals from the provisions of para-
graphs 1 and 4 of the final decree, alleging as to paragraph
(1) that the bill of complaint should not have been dismissed,
and as to paragraph (4) that the amount of $30 per week
for the support and maintenance of their minor child and
the counsel fee of $500 are inadequate. No appeal was taken
from that part of the decree awarding custody of the daughter
to her mother, with provision for visitation to the father.

The parties were married in 1938. Both were previously
married and divorced and each has a child by the previous
marriage. One child, a daughter, Alexanne, now nearly nine
years of age, is presently living with and in the custody of
her mother, as directed by said decree, with provision for
visitation to the father.

The marital life of the parties was beset with many dif-
ferences, as evidenced by breaking of the wife's nose by the
husband when he struck her on November 8th, 1940, as a re-
sult of which she went to the Suburban Hotel in Summit, New
Jersey, where she resided until she returned to her home in
Millburn upon receiving assurances from her husband that
he would treat her with conjugal kindness. Obviously, they
were not happy thereafter.

In 1944, the husband instituted a suit for divorce against
his wife on the ground of extreme cruelty. On August 23d,
1944, upon being served with citation and certified copy of
her husband's petition for divorce, she moved to the Hotel
East Orange, East Orange, New Jersey, taking her daughter
Alexanne with her. Mrs. Grossman filed an answer to her
husband's divorce suit, denying the alleged cause of action,

and a counter-claim for divorce. At the conclusion of the hearings on the petition and counter-claim, Advisory Master Grosman, on February 19th, 1946, advised a decree dismissing both the husband's petition for divorce and the wife's counter-claim.

Mrs. Grossman, after the divorce was instituted against her in 1944, continued to reside at the hotel in East Orange, New Jersey, during which time the husband supported her. In June of 1946, she moved to a home in Sea Girt, New Jersey, paying a rental of $150 per month, which rent, together with $50 per week, she received from her husband.

On November 19th, 1946, nine months after the dismissal of the divorce proceedings, the wife filed a bill of complaint praying for separate maintenance, in which she charged that her husband had ordered her to return to him and "threatening a tragedy to her if she did not." She also charged that he had not "paid a penny for the support of the complainant or the infant child of the marriage" since October 20th, 1946. However, the proofs are that the husband during one of his visits to the Sea Girt home in the month of October, 1946, gave his wife $700 for "rent, for living and for things which she claimed" and "also had to pay another $500 in checks." It was on this visit that the husband also paid a counsel fee of $500 to the wife's former counsel and the sum of $155 to Dr. Lambert Rogers (brother-in-law of Mrs. Grossman) for expenses incurred by him in her behalf. Accompanying the husband on this visit was the former counsel of the wife, a distinguished member of the bar of this State, and the wife in her testimony before the advisory master admitted that the purpose of their coming was to effect a reconciliation. There is also the testimony of Mrs. Florence Bissel and Colonel Robert Brambelle, that both, at the suggestion of the husband, requested the wife to return to her husband. The fact that the husband on the occasion of his October 17th, 1946, visit to the Sea Girt home, accompanied by the wife's former counsel, signed an agreement prepared by the wife in advance of their coming, limiting her household duties and assuring her certain rights, is persuasive evidence of the sincerity of the husband's efforts to effect a reconciliation.

Following the signing of the aforesaid agreement, there is testimony that the wife informed the husband she would have to remain at the Sea Girt home until about November 8th, 1946, awaiting the return of her former husband, so that he might be informed of the moving of his daughter Alexanne from Sea Girt; there is also testimony that the wife informed the husband she could not return to her Millburn home until December 15th, 1946, on the advice of Dr. Rogers, due to high blood pressure, and that she demanded the husband pay to Dr. Rogers an additional sum of $200, conditioned upon her return.

From the above facts, it is clear to us that the wife had no intention of returning to the home of her husband.

The role played by one, Mrs. Joseph Potter, who with her son went to live at the husband's home as a paying guest, would at first impression raise a strong implication against the motives of the husband; however, there is no testimony of any improper relations between them. Mrs. Potter, accompanied by her son and the husband, drove to the Sea Girt home on October 20th, 1946, to visit the wife and then on October 31st, 1946, Mrs. Potter made a return visit to the Sea Girt home as an emissary for the husband in an effort to persuade the wife to return to her husband, or, as the wife attempts to prove, to seek a divorce in Reno. The husband admits sending Mrs. Potter to talk to his wife with a view of having her return to her husband, but denies authorizing Mrs. Potter to suggest that the wife go to Reno and seek a divorce in the event of her refusal to return. The presence of a detective and a stenographer in the Sea Girt home on the occasion of Mrs. Potter's visit on October 31st, 1946, placed there by the wife for the purpose of turning to her advantage the interview between Mrs. Potter and the wife, evidences a determination on the part of the wife to use the information thus secretly obtained in future proceedings, if necessary.

The question whether the bill of complaint was improperly dismissed is dependent upon a determination of whether or not the requests made by the husband for the return of his wife were sincere. On appeal from a decree in the Court of

Chancery great weight is given to the findings on questions of fact. The advisory master saw the witnesses, heard them testify and had the opportunity of judging their credibility by their appearance, demeanor and conduct. *Cartan* v. *Phelps, 91 N. J. Eq. 312; Mayerson* v. *Mayerson, 107 N. J. Eq. 63; Guardian Life Insurance Company of America* v. *Mareczko, 114 N. J. Eq. 369; Haviland* v. *Haviland, 114 N. J. Eq. 96; Rains* v. *Rains, 127 N. J. Eq. 328,* and *Martindell* v. *Martindell, 123 N. J. Eq. 267.* We concur in the advisory master's findings of fact.

There remains the question whether the allowance of $30 per week for the support and maintenance of the infant child and counsel fee of $500 are inadequate. The wife argues that the $30 per week for the support of the child was fixed without any inquiry into the financial status of the husband, but no suggestion is made by counsel as to what she thinks the proper amount should be.

As to the counsel fee, it is pointed out that $150 was allowed on application *pendente lite,* so that the total amount received by counsel was $650, which is in addition to the sum of $500 paid to the former counsel of the wife on October 17th, 1946. Allowance of counsel fees in Chancery is within the discretion of the Chancellor and will not be disturbed on review unless there is an abuse of discretion. *Grunstra* v. *New-Ark Petroleum Corp., 111 N. J. Eq. 451; Barr* v. *Belmar, 118 N. J. Eq. 279.*

The record before us does not disclose that there was any abuse of discretion below and we see no reason for disturbing the amount allowed for the support of the daughter or the award of $500 counsel fee to the wife.

The decree appealed from is, therefore, affirmed.

*For affirmance*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, JACOBS, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ. 14.

*For reversal*—None.